UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

MICHAEL PAUL CASTRILLO                    CIVIL ACTION

VERSUS                                    NO: 09-4369

AMERICAN HOME MORTGAGE                    SECTION: R
SERVICING, INC., WELLS FARGO
BANK, N.A. AS TRUSTEE FOR
CITIGROUP MORTGAGE LOAN TRUST
INC., ASSET-BACKED PASS-
THROUGH CERTIFICATES, SERIES
2005-OPT4

## ORDER AND REASONS

Before the Court are defendants' motion to dismiss (R. Doc.
18) and Castrillo's motions for leave to file repleaded complaint
(R. Doc. 20) and for summary judgment (R. Doc. 26).  For the
following reasons, defendants' motion to dismiss is DENIED in
part and GRANTED in part.  Castrillo's motion to amend is DENIED
in part and GRANTED in part, and his motion for summary judgment
is DENIED.

## I.  BACKGROUND

Castrillo was a homeowner in Bywater, New Orleans.  It
appears from exhibits submitted by both parties that Castrillo
refinanced his home with H&R Block on April 22, 2005 and executed
an adjustable rate promissory note in the amount of $88,200.00.
(*See* R. Doc. 20-4, "Forged Promissory Note"; *see also* R. Doc. 20-
3 ¶ 3.)  H&R Block appears to have executed an allonge making
Castrillo's note payable to Option One Mortgage Corporation
("Option One"),[1] which in turn executed an allonge making the
note payable to bearer.  (*See* R. Doc. 20-4, "Forged
Assignments".)  Both allonges appear to have been executed by a
certain Charlene Campbell.  (*Id.*)  Castrillo disputes the
authenticity of the note and the allonges, as well as the date on
which the allonges were executed.  (*See* R. Doc. 20-3 ¶ 10; R.
Doc. 20-2 at 6.)

It appears that Castrillo fell behind on his mortgage
payments at some point in early 2008.  (*See* R. Doc. 20-4,
"Reinstatement Quote".)  Castrillo entered into a Loan
Modification Agreement with Option One on February 20, 2008.
(*See* R. Doc. 20-3 ¶ 4; R. Doc. 20-4, "2008 Loan Modification"; R.
Doc. 25, Ex. D.)  The agreement appears to have set a fixed

---

[1] Option One is now known as Sand Canyon Corporation.

2

interest rate of 6.50% and monthly mortgage payments of $674.40. (*Id.*) Castrillo alleges that he was wrongfully "induced" into signing the Loan Modification Agreement. (*See* R. Doc. 20-3 ¶ 4.)

At some point, American Home Mortgage Service, Inc. ("AHMSI") became the servicer of Castrillo's mortgage. Castrillo received a "Reinstatement Quote" from AHMSI dated December 19, 2008. (*See* R. Doc. 20-4, "Reinstatement Quote".) The Reinstatement Quote demands, *inter alia*, eleven overdue mortgage payments of $1,438.10 each, foreclosure attorneys' fees and costs and a sheriff's commission, for a total of $18,458.56. (*Id.*) Castrillo claims that the quote was improperly inflated because his mortgage payments were not $1,438.10, no foreclosure proceedings had been filed at that time, and no commission had been paid to the sheriff. (*See* R. Doc. 20-3 ¶ 5; R. Doc. 20-2 at 1.)

By letter dated January 19, 2009, Castrillo notified AHMSI that he was rescinding his April 2005 mortgage and February 2008 loan modification. (*See* R. Doc. 20-4, "Correspondence Between Plaintiff and Defendants".) By letter dated January 20, 2009, counsel for Wells Fargo notified Castrillo that Wells Fargo intended to institute foreclosure proceedings against his property. (*Id.*) It appears that Wells Fargo came into possession of the Loan Modification Agreement at some point in

2008 or 2009, but the exact date is unclear. (*See* R. Doc. 11, Ex. A.) Castrillo responded by sending counsel for Wells Fargo an undated letter disputing and requesting verification of his debt. (*See* R. Doc. 20-4, "Correspondence Between Plaintiff and Defendants".) Castrillo alleges that AHMSI replied on February 5, 2009 by sending him a forged copy of his promissory note. (*See* R. Doc. 20-3 ¶ 10; R. Doc. 20-2 at 6.)

On March 3, 2009, Castrillo filed a *pro se* lawsuit against AHMSI and Wells Fargo in the Orleans Parish Civil District Court. On April 8, 2009, Wells Fargo filed a separate executory foreclosure action against Castrillo before the same court. (*See* R. Doc. 25, Ex. E.) On June 24, 2009, Sand Canyon Corporation (successor to Option One) formally assigned Castrillo's mortgage to Wells Fargo. (*See* R. Doc. 25, Ex. F.)

On July 10, 2009, defendants removed Castrillo's *pro se* lawsuit to this Court, invoking its federal question jurisdiction. (*See* R. Doc. 1-1.) Castrillo filed a "Motion to Complete File" on July 30, 2009. (*See* R. Doc. 12.) The Court treated this as a motion to amend, and granted the motion on August 31, 2009. (R. Doc. 23.) On August 10, 2009, defendants moved to dismiss Castrillo's complaint for failure to comply with Rule 8 of the Federal Rules of Civil Procedure. (R. Doc. 18.) Castrillo then filed a "Motion for Leave to File Repleaded

4

Complaint." (*See* R. Doc. 20.)  The Court treats this motion as a second motion to amend.  The proposed repleaded complaint and supporting memorandum include the following legal claims:

1.    Violation of the Fair Debt Collection Practices by making false representations, failing to verify a disputed debt, and initiating foreclosure proceedings;

2.    Violation of the National Housing Act by failing to provide notice of the availability of counseling and failing to mitigate losses;

3.    Violation of the Truth in Lending Act by failing to follow certain procedures after Catrillo allegedly rescinded his mortgage;

4.    Violation of the Real Estate Settlement Procedures Act by failing to adequately respond to inquiries;

5.    Violation of the Racketeer Influenced and Corrupt Organizations Act by forging a promissory note;

6.    Fraud in the inducement of the 2008 Loan Modification Agreement, and attempt to collect on a fraudulent mortgage note.

(*See* R. Doc. 20-2.)  Defendants oppose Castrillo's proposed repleaded complaint on grounds that it does not satisfy Rule 8, and that the claims raised are futile.  Castrillo moved for summary judgment on September 14, 2009.  (R. Doc. 26.)

Defendants oppose the summary judgment motion both as premature and on the merits.  (R. Doc. 27.)


## II.  LEGAL STANDARDS

Leave to amend a complaint is freely given "when justice so requires."  Fed. R. Civ. P. 15(a); *see also High Tech Comm's v. Panasonic Co.*, Civ. A. No. 94-1477, 1995 WL 65133, at *1 (E.D. La. 1995) (Vance, J.).  In exercising its discretion in granting or denying leave to amend, the Court may consider whether the party seeking leave is doing so after undue delay, in bad faith, or for a dilatory motive.  *See Jamieson By and Through Jamieson v. Shaw*, 772 F.2d 1205, 1208 (5th Cir. 1985).  "It is within the district court's discretion to deny a motion to amend if it is futile."  *Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863, 872-73 (5th Cir. 2000).  Futility means "that the amended complaint would fail to state a claim upon which relief could be granted."  *Id.*  Thus, to determine futility, the court "appl[ies] the same standard of legal sufficiency as applies under Rule 12(b)(6)."  *Id.*

Under the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  The complaint must "give the defendant fair notice of what the

claim is and the grounds upon which it rests." *Dura Pharm., Inc.
v. Broudo*, 544 U.S. 336, 346 (2005).  The allegations "must be
simple, concise, and direct."  Fed. R. Civ. P. 8(d)(1).
Furthermore, to survive a Rule 12(b)(6) motion to dismiss, the
plaintiff must plead enough facts "to state a claim to relief
that is plausible on its face." *Ashcroft v. Iqbal*, – U.S. –, 129
S.Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*,
550 U.S. 544, 547 (2007)).  A claim is facially plausible when
the plaintiff pleads facts that allow the court to "draw the
reasonable inference that the defendant is liable for the
misconduct alleged." *Iqbal*, 129 S.Ct. at 1949.  The factual
allegations must "raise a reasonable expectation that discovery
will reveal evidence" of liability. *Twombly*, 550 U.S. at 556.
"A court must accept all well-pleaded facts as true and must draw
all reasonable inferences in favor of the plaintiff. *Lormand v.
U.S. Unwired, Inc.*, 565 F.3d 228, 232-33 (5th Cir. 2009); *Baker
v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996).  The court is not,
however, bound to accept as true legal conclusions couched as
factual allegations. *Iqbal*, 129 S.Ct. at 149-50.  Although *pro
se* plaintiffs are held to less stringent standards than those
drafted by lawyers, "conclusory allegations or legal conclusions
masquerading as factual conclusions will not suffice to prevent a

motion to dismiss." *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002).

In determining whether to grant a motion to dismiss, a district court generally may not "go outside the complaint." *Scanlan v. Tex. A & M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003). When ruling on a motion to dismiss a *pro se* complaint, however, a district court is "required to look beyond the [plaintiff's] formal complaint and to consider as amendments to the complaint those materials subsequently filed." *Howard v. King*, 707 F.2d 215, 220 (5th Cir. 1983); *Clark v. Huntleigh Corp.*, 119 F. App'x 666, 667 (5th Cir. 2005) (finding that because of plaintiff's *pro se* status, "precedent compels us to examine all of his complaint, including the attachments"); *cf.* Fed. R. Civ. P. 8(d) ("Pleadings must be construed so as to do justice."). Furthermore, a district court may consider documents attached to a motion to dismiss if they are referred to in the plaintiff's complaint and are central to the plaintiff's claim. *Scanlan*, 343 F.3d at 536.

## III. DISCUSSION

### A.   Rule 8

According to defendants, Castrillo's proposed repleaded complaint does not contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R.

Civ. P. 8(a)(2). The Court finds that Castrillo's repleaded complaint and supporting memorandum and exhibits (*see* R. Doc. 20) are sufficiently "simple, concise, and direct" to achieve the purposes of Rule 8. Fed. R. Civ. P. 8(d)(1); *see also Gordon v. Green*, 602 F.2d 743, 746 (5th Cir. 1979) (finding that underlying purpose of Rule 8 is "to eliminate prolixity in pleading and to achieve brevity, simplicity, and clarity"). It is true that the combined length of the repleaded complaint, supporting memorandum and exhibits total 75 pages. (*See* R. Doc. 20.) But this does not make the pleadings unclear. To the contrary, Castrillo's memorandum specifically identifies each provision of law that was allegedly violated then provides factual allegations in support of the claimed violations. Although Castrillo's strategy has resulted in a lengthy complaint, it is not confusing. Indeed, defendants' opposition to Castrillo's motion for leave to file the repleaded complaint adequately identifies and responds to each of Castrillo's claims. Accordingly, defendants' motion to dismiss for failure to comply with Rule 8 is DENIED.

**B.   Fair Debt Collection Practices Act**

Castrillo claims that defendants violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq.*, by making false representations, contacting Castrillo to work out payment arrangements on a disputed debt, and initiating foreclosure proceedings.  (*See* R. Doc. 20-2 at 1-3, 24.) Defendants argue that they are not "debt collectors" subject to the FDCPA, and that Castrillo has failed to allege facts that would violate the FDCPA.  The Court finds that Castrillo has stated a claim under the FDCPA.

The FDCPA seeks to eliminate "abusive, deceptive, and unfair debt collection practices" by regulating the type and number of contacts a "debt collector" can make with a debtor.  *See* 15 U.S.C. § 1692; *Murungi v. Tex. Guar.*, - F. Supp. 2d -, 2009 WL 1971055, at *6 (E.D. La. July 2, 2009).  A "debt collector" is "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."  15 U.S.C. § 1692a(6).  The term "debt collector" does not apply to "any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity (i) is incidental to a

*bona fide* fiduciary obligation . . . (ii) concerns a debt which was originated by such person; [or] (iii) concerns a debt which was not in default at the time it was obtained by such person . . ." 15 U.S.C. § 1692a(6)(F). The Fifth Circuit has held that a party enforcing a mortgage may be subject to the FDCPA. *See Kaltenbach v. Richards*, 464 F.3d 524, 529 (5th Cir. 2006). It has also held, however, that a debt collector "does not include . . . a mortgage servicing company, or an assignee of a debt, as long as the debt was not in default at the time it was assigned." *Perry v. Stewart Title Co.*, 756 F.2d 1197, 1208 (5th Cir. 1985) (citing S. Rep. No. 95-382 (1977), *reprinted in* 1977 U.S.C.C.A.N. 1695, 1698)).

1.    *AHMSI*

Castrillo alleges that AHMSI obtained an interest in his mortgage and attempted to collect a debt after he was in default. (*See* R. Doc. 20-2 at 1-3, 24.) AHMSI sent Castrillo a Reinstatement Quote on December 19, 2008 seeking to collect 11 missed mortgage payments as well as other charges. (*See* R. Doc. 20-4, "Reinstatement Quote".) The Reinstatement Quote states that it is "an attempt to collect a debt" sent "from a debt collector" and is "required by the Federal Fair Debt Collection Practices Act." (*Id.*) The relevant legal issue is when AHMSI

took Castrillo's mortgage for servicing. If AHMSI took the mortgage for servicing before Castrillo was in default, it is not a debt collector subject to the FDCPA. *See* S. Rep. No. 95-382, 1977 U.S.C.C.A.N. 1695, at 1698 (finding that mortgage service company not a debt collector "so long as the debts were not in default when taken for servicing"). If it took the mortgage after Castrillo's default, it would be a debt collector. The Court cannot resolve this issue on a motion to dismiss, and therefore cannot conclude that Castrillo's claims against AHMSI under the FDCPA are futile as a matter of law.

With respect to Castrillo's substantive claims against AHMSI, the FDCPA prohibits false, deceptive or misleading attempts to collect a debt. *See* 15 U.S.C. § 1692e(2)(A), (10). Castrillo alleges that the amounts included in AHMSI's Reinstatement Quote were falsely inflated. (*See* R. Doc. 20-2 at 1-3.) If true, this would be a false representation of the amount of his debt and a deceptive means of collecting that debt. Castrillo has therefore stated a claim under 15 U.S.C. § 1692e(2)(A) and (10).

The FDCPA also requires debt collectors to provide certain information "in the initial communication" with the consumer or "[w]ithin five days after the initial communication." *See* 15 U.S.C. § 1692g(a); *see also Kaltenbach*, 464 F.3d at 528. This

includes notice of the name of the creditor to whom the debt is
owed, and notice of the consumer's right to dispute the validity
of the debt within 30 days and to require the debt collector to
obtain and provide verification of the debt.  15 U.S.C. §
1692g(a)(2)-(5).  AHMSI's Reinstatement Quote includes none of
this information.  (*See* R. Doc. 20-4, "Reinstatement Quote".)
Factual development will be necessary to determine whether the
Reinstatement Quote was AHMSI's initial communication with
Castrillo, and whether the required information was sent to
Castrillo within five days.

Lastly, upon notification of a disputed debt, the FDCPA
requires a debt collector to "cease collection of the debt" until
verification of the debt has been mailed to the consumer.  *See* 15
U.S.C. § 1692g(b).  Castrillo alleges that he disputed the
amounts demanded in the Reinstatement Quote in January 2009.
(*See* R. Doc. 20-4, "Correspondence Between Plaintiff and
Defendants".)  If the amounts demanded in the Reinstatement Quote
were improperly inflated, AHMSI would be prohibited from pursuing
further debt collection activities until it verified the correct
amounts.  Accordingly, Castrillo has stated a claim under 15
U.S.C. § 1692g(b).

2. *Wells Fargo*

Castrillo has alleged that Wells Fargo obtained an interest in his mortgage and attempted to collect a debt after he was in default. If so, the substantive provisions of FDCPA identified above would also apply to Wells Fargo. Specifically, after Castrillo disputed his debt (*see* R. Doc. 20-4, "Correspondence Between Plaintiff and Defendants"), Wells Fargo was required to obtain and provide verification of the debt before instituting foreclosure proceedings in state court. *See* 15 U.S.C. §§ 1692e(2)(A), (10), 1692g(b).

Wells Fargo sent Castrillo a "Notice Pursuant to the Fair Debt Collection Practices Act" on January 20, 2009. (R. Doc. 20-4, "Correspondence Between Plaintiff and Defendants".) This notice "attempt[ed] to collect a debt" of $103,182.61. (*Id.*) As already mentioned, it appears that Castrillo was in default as of early 2008.[2] (*See* R. Doc. 20-4, "Reinstatement Quote"; *see also* R. Doc. 25, Ex. C.) Factual development will be necessary to determine whether Wells Fargo acquired its interest in

---

[2] Wells Fargo's Petition to Enforce Security Interest by Executory Process alleges that Castrillo was in default as of March 1, 2008. (*See* R. Doc. 25, Ex. E.) It does not state when Wells Fargo allegedly obtained its interest in Castrillo's mortgage. (*Id.*)

Castrillo's note before he was in default, and therefore whether Wells Fargo is a "debt collector" subject to the FDCPA.

Defendants assert that foreclosure pursuant to a deed of trust is not subject to the FDCPA. To the extent defendants argue that the FDCPA does not apply to litigation activities, this argument has been rejected by the United State Supreme Court and the Fifth Circuit. *See Heintz v. Jenkins*, 514 U.S. 291, 299 (1995) (holding FDCPA applies to attorneys conducting litigation activities); *Kaltenbach*, 464 F.3d at 526, 528 (holding FDCPA applies to initiation of executory process foreclosure). To the extent defendants argue that they are not "debt collectors" because they are collecting debts "incidental to a *bona fide* fiduciary obligation," *see* 15 U.S.C. § 1692a(6)(F)(i), the Court cannot evaluate this claim on a motion to dismiss because Wells Fargo's trust arrangement and resulting fiduciary obligations are not in the record. The Court observes that this argument has been expressly rejected by the Fourth Circuit. *See Wilson v. Draper & Goldberg*, P.L.L.C., 443 F.3d 373, 378 (4th Cir. 2006) ("Thus, Defendants cannot benefit from § 1692a(6)(F)(i)'s exception to the definition of 'debt collector' merely because they were trustees foreclosing on a property pursuant to a deed of trust.").

Defendants rely on *Hulse v. Ocwen Fed. Bank, FSB*, 195 F. Supp. 2d 1188, 1204 (D. Or. 2002). *Hulse* held that foreclosure actions were not included in the definition of a "debt" under the FDCPA, and therefore creditors and attorneys who brought foreclosure proceedings were not "debt collectors." *Id.* It reasoned that "[f]oreclosing on a trust deed is distinct from the collection of the obligation to pay money . . . . Payment of funds is not the object of the foreclosure action. Rather, the lender is foreclosing its interest in the property." *Id.* *Hulse*'s reasoning has been expressly rejected by the Fifth Circuit. *See Kaltenbach*, 464 F.3d at 528 (finding that *Hulse* "misconstrues § 1692a(6)'s method of defining" debt collector); *see also Wilson*, 443 F.3d at 376 ("Defendant's argument, if accepted, would create an enormous loophole in the Act immunizing any debt from coverage if that debt happened to be secured by a real property interest and foreclosure proceedings were used to collect the debt. We see no reason to make an exception to the Act when the debt collector uses foreclosure instead of other methods."). In any event, Wells Fargo's involvement goes beyond simply initiating foreclosure proceedings. Counsel for Wells Fargo sent Castrillo a "Notice Pursuant to the Fair Debt Collection Practices Act" on January 20, 2009. (*See* R. Doc. 20-4, "Correspondence Between Plaintiff and Defendants".) As the

16

letter itself states, "[t]his is an attempt to collect a debt" in the amount of $18,458.56. *Id.* Accordingly, defendants' reliance on *Hulse* is misplaced.

Lastly, apart from what has been said above, the Court finds that Wells Fargo did not violate the FDCPA or Louisiana law simply because it brought foreclosure proceedings before it was formally "assigned" Castrillo's mortgage note. (*See* R. Doc. 25, Ex. F.)  In Louisiana, the "holder" of bearer paper may foreclose by executory process as long as it produces authentic evidence of the "instrument evidencing the obligation secured by the mortgage" and the "act of mortgage importing a confession of judgment."  La. Rev. Stat. §§ 13:4102(A); La. Code Civ. P. art. 2635; *see also Gulf Nat. Bank at Lake Charles v. Dupuis*, 402 So.2d 789, 793 (La. Ct. App. 1981) ("A promissory note payable to the order of bearer and secured by a mortgage may be transferred by mere delivery.  Authentic evidence of the transfer of the note is not necessary to enable the holder to foreclose by executory process."); *Terrebonne Bank & Trust Co. v. Smith*, 415 So.2d 414, 417-18 (La. App. 1 Cir. 1982) ("A pledgee to whom a [bearer] note is delivered becomes the holder thereof and may enforce payment.").  A certified copy of a notarized mortgage agreement is authentic evidence for purposes of executory process.  La. Code Civ. P. art. 2636(1), (2); *see also Slidell Bldg. Supply,*

17

*Inc. v. I.D.S. Mortg. Corp.*, 273 So.2d 343, 347–48 (La. Ct. App. 1973). Here, Wells Fargo attached certified copies of Castrillo's notarized mortgage agreement and notarized Loan Modification Agreement to its petition for executory process. (*See* R. Doc. 25, Ex. E at 16, 27, 28, 30.) The mortgage agreement includes a confession of judgement (*see id.* at 26 ("Borrower hereby confesses judgment in favor of Lender and any further holder of the Note in the full amount of all sums secured by this Security Instrument . . . .")), and the Loan Modification Agreement incorporates this covenant (*see id.* at 29). Accordingly, the filing of Wells Fargo's executory process petition was not *per se* improper.

For the reasons stated, Castrillo's claims under the FDCPA are not futile, and his motion to amend them to his complaint is GRANTED. Defendants' motion to dismiss Castrillo's FDCPA claims is DENIED.

## C.    National Housing Act

Castrillo claims that defendants violated the National Housing Act ("NHA") by not providing him with notice of the availability of debt counseling and failing to mitigate losses. Defendants argue that Castrillo has no private right of action under the National Housing Act. Defendants are correct.

18

The NHA requires creditors to notify homeowners who fall
behind on their mortgage loans of the availability of any
homeownership counseling offered by the creditor.  *See* 12 U.S.C.
§ 1701x(c)(5)(A)(i), (ii)(I).  It also requires certain creditors
to take loss mitigation measures upon default or imminent default
on certain mortgage loans for the purpose of providing an
alternative to foreclosure.  *See* 12 U.S.C. § 1715u; 24 C.F.R. §
203.605(a).  The Fifth Circuit has held, however, that Congress
did not intend to create a private right of action under the
National Housing Act.  *See Deubert v. Gulf Fed. Sav. Bank*, 820
F.2d 754, 758-59 (5th Cir. 1987) ("Our examination of the *Cort*
factors leads us to conclude that no private cause of action can
be implied from the National Housing Act."); *Roberts v. Cameron-
Brown Co.*, 556 F.2d 356, 361 (5th Cir. 1977) ("No evidence exists
demonstrating that Congress intended to create a private cause of
action under the National Housing Act.").  Other Circuits have
arrived at a similar conclusion in various contexts.  *See, e.g.*,
*City of Rohnert Park v. Harris*, 601 F.2d 1040, 1046-47 (9th Cir.
1979), *cert. denied*, 445 U.S. 961 (1980); *Shivers v. Landrieu*,
674 F.2d 906 (D.C. Cir. 1981); *M. B. Guran Co., Inc. v. City of
Akron*, 546 F.2d 201 (6th Cir. 1976); *Falzarano v. United States*,
607 F.2d 506, 508-09 (1st Cir. 1979); *Gaitan v. Mortg. Elec.
Registration Sys.*, Civ. A. No. 09-1009, 2009 WL 3244729, at *10

(C.D. Cal. Oct. 5, 2009) (finding "no indication of an intent to create a private right of action in 12 U.S.C. § 1701x(c)(5)"). Accordingly, Castrillo's proposed claims under the NHA would be futile, and his motion to amend them to his complaint must be DENIED. Defendants' motion to dismiss Castrillo's NHA claims is GRANTED.

**D.    Truth in Lending Act**

Castrillo claims that defendants violated the Truth in Lending Act ("TILA") by not following certain procedures following the purported rescission of his mortgage. Defendants argue that Castrillo's TILA claims are time barred with respect to the 2005 mortgage refinancing, and that there are no TILA requirements with respect the February 2008 Loan Modification Agreement. Defendants are correct.

TILA "has the broad purpose of promoting 'the informed use of credit' by assuring 'meaningful disclosure of credit terms' to consumers." *Ford Motor Co. v. Milhollin*, 444 U.S. 555, 559-60 (1980) (citing 15 U.S.C. § 1601). TILA defines disclosures that must be made in certain consumer credit transactions, including disclosure of the consumer's right to rescind up to three business days following consummation of the transaction, delivery of a notice of right to rescind, or delivery of all material

20

disclosures, whichever occurs last. *See* 15 U.S.C. § 1635(a); 12 C.F.R. §§ 226.23(a)(3), (b). If notice of the right to rescind and certain material disclosures are not timely made, the right to rescind expires three years after consummation of the transaction. *See* 15 U.S.C. §1635(f); 12 C.F.R. §§ 226.23(a)(3). TILA violations are otherwise subject to a one year statute of limitations. *See* 15 U.S.C. § 1640(e). If an obligor exercises his right to rescind, the security interest given by the obligor is void, and the creditor must return any money or property given as earnest money or downpayment and take any necessary action to reflect the termination of the security interest. 15 U.S.C. § 1635(b). Once the creditor performs its obligations, the obligor is required to tender the property to the creditor, or tender its reasonable value. *Id.*

There is no right of rescission with respect to "residential mortgage transactions." *See* 15 U.S.C. § 1635(e)(1); 12 C.F.R. § 226.23(f)(1); *Perkins v. Central Mortg. Co.*, 422 F. Supp. 2d 487, 489 (E.D. Pa. 2006). A "residential mortgage transaction" means "a transaction in which a mortgage . . . is created or retained against the consumer's dwelling to finance the acquisition or initial construction of such dwelling." 15 U.S.C. § 1602(w). Similarly, there is no right to rescind with respect to a "refinancing" by the same creditor. 15 U.S.C. § 1635(e)(2); 12

C.F.R. § 226.23(f)(2) ("The right to rescind does not apply to .
. . [a] refinancing . . . by the same creditor . . . .").

A right to rescind may be available with respect to a
refinancing of a residential mortgage by a *different* creditor or
with respect to a variable-rate adjustment to a residential
mortgage. *See* 12 C.F.R. § 226.23(f)(2); Official Staff
Interpretation, Supp. I to 12 C.F.R. § 226.20(f), ¶ 4 ("The
exemption in § 226.23(f)(2) applies only to refinancings . . . by
the original creditor."). For a refinancing with a different
creditor to give rise to a right of rescission, however, the
existing obligation must be "satisfied and replaced by a new
obligation." 12 C.F.R. § 226.20(a). The "new obligation must
completely replace the prior one." Official Staff
Interpretation, Supp. I to 12 C.F.R. § 226.20(a), ¶ 1. Thus,
mere changes to the terms of an existing obligation do not give
rise to a right of rescission unless "accomplished by the
cancellation of that obligation and the substitution of a new
obligation." *Id.; Sheppard v. GMAC Mortgage Corp.*, 299 B.R. 753,
762 (E.D. Pa. 2003) (collecting authorities: mere loan
modification does not constitute refinancing). The addition of a
variable-rate feature to an existing obligation may constitute a
new transaction giving rise to a new right of rescission. *See*

Official Staff Interpretation, Supp. I to 12 C.F.R. §
226.20(a), ¶ (3)(ii)(B).

In this case, Castrillo argues that he exercised his right
of rescission with respect to both the April 2005 refinancing and
the February 2008 Loan Modification Agreement, and that
defendants have failed to return money and property as required
by TILA. *See* 15 U.S.C. § 1635(b). As a preliminary matter, the
Court finds that Castrillo failed to timely rescind his April
2005 mortgage. Even if Castrillo never received the required
notices and disclosures with respect to the 2005 transaction, he
was required to exercise his right of rescission within three
years, or by April 22, 2008. *See* 15 U.S.C. § 1635(f). Castrillo
alleges that he mailed a rescission letter to AHMSI on January
19, 2009. (*See* R. Doc. 20-4, "Correspondence Between Plaintiff
and Defendants".) This attempted rescission was untimely and
ineffective, and accordingly defendants had no obligations with
respect to it.

The three year limitation has not run with respect to
Castrillo's attempted rescission of the February 2008 Loan
Modification Agreement. Official Staff Interpretation, Supp. I
to 12 C.F.R. § 226.20(a). Nonetheless, Castrillo has failed to
allege that the Loan Modification Agreement is subject to the
TILA rescission provisions. By its terms, the Loan Modification

Agreement does not "satisfy" and "completely replace" the 2005 mortgage and note but rather "amends and supplements" them. (R. Doc. 20-4, "2008 Loan Modification"; R. Doc. 25, Ex. D.)  The agreement expressly provides that it is not a "satisfaction or release in whole or in part of the Note and Security Instrument. Except as otherwise specifically provided in this Agreement, the Note and Security Instrument will remain unchanged . . . ." (*Id.*)  Nor does the Loan Modification Agreement add a variable-rate feature; indeed, it includes a fixed interest rate of 6.50%. (*Id.*)  Thus, as its terms suggest, the Loan Modification Agreement is a mere modification of an existing debt and not a "refinancing' by a different creditor.  It therefore does not give rise to disclosure requirements or rescission rights under TILA.  *See* Official Staff Interpretation, Supp. I to 12 C.F.R. § 226.20(a), ¶ 1.  Accordingly, Castrillo's claims under TILA are futile, and his motion to amend them to his complaint must be DENIED.  Defendants' motion to dismiss Castrillo's TILA claims is GRANTED.

**E.    Real Estate Settlement Procedures Act**

Castrillo claims that defendants violated the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2605(e), by not properly responding to a qualified written request.  (*See* R. Doc.

20-2 at 5.)  Defendants argue that it is undisputed that they
responded to Castrillo's request by sending him a copy of his
promissory note.  The Court finds that Castrillo has stated a
claim under RESPA.

RESPA requires loan servicers to timely respond to
"qualified written requests" from borrowers.  *See* 12 U.S.C. §
2605(e).  A "qualified written request" is a correspondence that
adequately identifies the borrower and provides reasons for the
borrower's belief "that the account is in error or provides
sufficient detail to the servicer regarding other information
sought by the borrower."  12 U.S.C. § 2605(e)(1)(B).  Within 60
days of receiving a qualified written request, a loan servicer
must (a) make appropriate corrections in borrower's account; (b)
provide the borrower with a written explanation of why the
account is correct and who the borrower may contact for further
assistance; or (c) provide the borrower with the information
requested, or a written explanation of why the information is
unavailable or cannot be obtained by the servicer and who the
borrower may contact for further assistance.  12 U.S.C. §
2605(e)(2)(B)-(C).  An individual who brings a successful action
under § 2605 is entitled to actual damages and reasonable costs
and attorneys' fees.  12 U.S.C. § 2605(f)(3).

Castrillo alleges that he sent a qualified written request to Wells Fargo in response to Wells Fargo's letter dated January 20, 2009. (*See* R. Doc. 20-3 ¶ 9.) Castrillo's letter appears to be a "qualified written request" because it sufficiently identifies Castrillo and requests certain information about his account. Specifically, the letter requests (1) the amount of Castrillo's debt; (2) the name of the creditor to whom the debt is owed; and (3) proof or evidence of the debt and that it is owed to the named creditor. (*See* R. Doc. 20-4, "Correspondence Between Plaintiff and Defendants".) Accordingly, within sixty days of January 20, 2009, Wells Fargo was required to provide this information in writing or explain why it was unavailable. *See* 12 U.S.C. § 2605(e)(2)(B)-(C).

The Court finds that Castrillo has sufficiently alleged that defendants failed to satisfy their obligations under RESPA. Wells Fargo's letter dated January 20, 2009 asserts that Castrillo owed it $103,182.61. (*See* R. Doc. 20-4, "Correspondence Between Plaintiff and Defendants".) The letter expressly states that Wells Fargo's counsel had not made an independent determination "of the accuracy of the amount you owe or the validity of the debt." (*Id.*) It also states that if requested, Wells Fargo "will obtain and provide you with verification of the debt by mail." (*Id.*) Castrillo responded by

requesting proof or evidence of the debt. (*Id.*) Castrillo's request appears to have been forwarded to AHMSI, which appears to have responded to him by letter dated February 5, 2009. (*Id.*) AHMSI's letter attaches a promissory note, but this note indicates a promise to pay only $88,200. (*Id.*) Accordingly, the Court cannot conclude that Castrillo's claims under RESPA would be futile, and therefore his motion to amend them to his complaint is GRANTED. Defendants' motion to dismiss Castrillo's RESPA claims is DENIED.

## F.   Racketeer Influenced and Corrupt Organizations Act

Castrillo claims that defendants violated the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c), by attempting to enforce an allegedly forged promissory note. (R. Doc. 20-2 at 6-23.) Section 1962(c) makes it unlawful for any person employed by or associated with any enterprise engaged in interstate commerce to conduct or participate in the conduct the enterprise's affairs "through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c) (emphasis added). Castrillo bases his RICO claim on only a "pattern of racketeering activity" and not on a

"collection of unlawful debt."[3]  Defendants argue that Castrillo

has failed to state a RICO claim because he has not alleged that

defendants engaged in a pattern of racketeering activity.

To withstand a motion to dismiss, a civil RICO plaintiff

must allege facts sufficient to establish each of the essential

elements of his RICO claim.  *See Price v. Pinnacle Brands, Inc.*,

138 F.3d 602, 606 (5th Cir. 1998).  A plaintiff must allege

specific facts concerning (1) the conduct (2) of an enterprise

(3) through a pattern (4) of racketeering activity.  See *Elliot

v. Foufas*, 867 F.2d 877, 880 (5th Cir. 1989) (finding that each

of RICO's essential elements "is a term of art which carries its

own inherent requirements of particularity").

To allege a "pattern of racketeering activity," a plaintiff

must show that the defendant committed two or more predicate

offenses that are (1) related and (2) amount to or pose a threat

of continued criminal activity.  *H.J. Inc. v. Nw. Bell Tel. Co.*,

492 U.S. 229, 239 (1989)); *see also Word of Faith World Outreach*

---

[3] Castrillo properly does not base his RICO claim on the
"collection of unlawful debt" because the term is defined as
including only "a debt (A) incurred or contracted in gambling
activity . . . and (B) which was incurred in connection with . .
. the business of lending money . . . at a rate usurious under
State or Federal law . . . ." 18 U.S.C. § 1961(6).  There are no
allegations of illegal gambling or usury in this case.

*Center Church, Inc. v. Sawyer*, 90 F.3d 118, 122 (5th Cir. 1996);

*Abraham v. Singh*, 480 F.3d 351, 355 (5th Cir. 2007).

Predicate offenses include the violation of certain state and federal laws. *See* 18 U.S.C. § 1961(1). In this case, Castrillo alleges that defendants committed acts of mail fraud, wire fraud, bank fraud, state law fraud/forgery, state law theft, state law theft of identity, and transportation of stolen property. (*See* R. Doc. 11, 20.) The Court need not address precisely which of these alleged acts constitute predicate offenses under 18 U.S.C. § 1961(1).

The requirement of "continued criminal activity" reflects Congress's concern with "long-term criminal conduct." *H.J., Inc.*, 492 U.S. at 242. Continuity is "both a closed- and open-ended concept, referring either to a closed period of repeated conduct, or past conduct that by its nature projects into the future with a threat of repetition." *Id.* at 239. An open period of continuity refers to a "specific threat of repetition extending indefinitely into the future" or "that the predicates are a regular way of conducting defendant's ongoing legitimate business." *Id.* A closed period of continuity may be demonstrated by a series of related predicates extending over a substantial period of time. *Id.* at 242.

The Fifth Circuit has consistently held that "where alleged RICO predicate acts are part and parcel of a single, otherwise lawful transaction, a 'pattern of racketeering activity' has not been shown." *See Word of Faith*, 90 F.3d at 123. In *Word of Faith*, a church alleged various racketeering acts in connection with the production of ABC *PrimeTime* broadcasts, including interstate transportation of stolen computer disks, theft of donations, wire fraud, and obstruction of justice. *Id.* at 121. The Fifth Circuit affirmed dismissal of the RICO complaint because the alleged predicate acts "were all part of a single, lawful endeavor - namely the production of television news reports concerning a particular subject." *Id.* at 123. Similarly, in *In re Burzynski* the Fifth Circuit affirmed dismissal of a RICO complaint arising out of what it deemed a single, discrete transaction. 989 F.2d 733, 742-43 (5th Cir. 1993). A doctor alleged that an insurance company committed various fraudulent acts over several months of litigation, including sending letters to other insurers to dissuade them from paying on the doctor's claims, creating a company to generate negative reviews of the doctor's methods of treatments, and prompting government agencies to investigate the doctor. *Id.* at 737-38. The Fifth Circuit held that the doctor failed to allege a pattern of predicate acts because the acts all took place

during the course of a single lawsuit. *Id.* at 742.  Lastly, in *Delta Truck & Tractor, Inc. v. J.I. Case Co.*, the Fifth circuit affirmed dismissal of a RICO complaint that did not sufficiently allege a "continuous threat."  855 F.2d 241, 244 (5th Cir. 1988), *cert. denied*, 489 U.S. 1079 (1989).  The plaintiff alleged various acts of mail and wire fraud in connection with a corporate merger and reorganization.  *Id.*  The Fifth Circuit held that the complaint alleged "nothing more than numerous predicate acts which were necessary segments of an otherwise legitimate and singular commercial endeavor."  *Id.*

    The Court finds that the specific factual allegations of this case are similar to *Word of Faith*, *In re Burzynski*, and *Delta*.  Like the litigation in *In re Burzynski*, the allegedly fraudulent debt collection in this case - essentially an eviction proceeding - is a "single, discrete" transaction.  *See Word of Faith*, 90 F.3d at 123.  Moreover, an eviction proceeding does not "by its nature project[] into the future with a threat of repetition." *H.J., Inc.* 492 U.S. at 241.  To the contrary, it is by its nature a one-time resolution of disputed property rights.  Defendants' conduct thus implicates, at best, "[p]redicate acts extending over a few weeks or months and threatening no future criminal conduct."  *J.H., Inc.*, 492 U.S. at 242.

It is not relevant to the Court's analysis that the state court foreclosure proceeding between Castrillo and defendants is ongoing and has not ended. *See In re Burzynski*, 989 F.2d at 741 (finding that "*[a]ll* of the alleged predicate acts took place as part fo the *Burzynski I* litigation, which has ended."). Although the state court foreclosure proceeding may extend somewhat into the future, it is unlikely to "continue[] indefinitely." *See Abraham*, 480 F.3d at 356. It is instead likely to be a short-term event, and "[s]hort-term criminal conduct is not the concern of RICO." *Calcasieu*, 943 F.2d at 1464. Moreover, the Court presumes that the Orleans Parish Civil District Court is capable of detecting and preventing fraudulent foreclosure actions. The Court therefore finds that sustained unlawful conduct by defendants before the CDC is unlikely.

In attempting to explain why "continuity" has been adequately pleaded in this case, Castrillo asserts that "if Defendants had successfully submitted their forgery, and thereby caused the CDC to falsely establish their ownership of said note, the fraud would have continued until the note was satisfied, a term of thirty years." (R. Doc. 20-2 at 11.) Castrillo appears to be focusing on the long-term *effects* of defendants' alleged criminal activities, not on their repeated occurrence. If title to plaintiffs' property is erroneously determined, the effects of

that determination will no doubt be felt by Castrillo into the future.  But this does not establish a "threat of continued racketeering activity" by defendants.  *H.J., Inc.*, 492 U.S. at 242.  "Congress was concerned in RICO with long-term criminal *conduct*" and "continuity of racketeering *activity*" - not with the long-term consequences of isolated or sporadic unlawful conduct.  *See id.* at 241-42 (emphasis added).  As already discussed, Castrillo has failed to sufficiently allege a threat that defendants will engage in repeated, long-term criminal activity.

For all of these reasons, Castrillo's proposed amended complaint fails to allege a pattern of racketeering activity.  Accordingly, Castrillo's claims under RICO are futile, and his motion to amend them to his complaint must be DENIED.  Defendants' motion to dismiss Castrillo's RICO claims is GRANTED.


**G.    FRAUD IN THE INDUCEMENT OF THE 2008 LOAN MODIFICATION AGREEMENT, AND ATTEMPT TO COLLECT ON A FRAUDULENT MORTGAGE NOTE**

Castrillo claims that defendants fraudulently induced him to execute the February 2008 Loan Modification Agreement, and that they have attempted to collect on a fraudulent mortgage note.  Defendants argue that Castrillo has failed to allege fraud with particularity.  Defendants are correct.

In Louisiana, there are three basic elements to an action
for fraud or intentional misrepresentation: (a) a
misrepresentation of a material fact, (b) made with the intent to
deceive, and (c) causing justifiable reliance with resultant
injury. *Guidry v. U.S. Tobacco Co., Inc.*, 188 F.3d 619, 627 (5th
Cir. 1999); *Jefferson v. Lead Indus. Ass'n, Inc.*, 106 F.3d 1245,
1254 (5th Cir. 1997) (same); *Shelton v. Standard/700 Assocs.*, 798
So.2d 60, 64 (La. 2001) (identifying similar elements for action
for fraud against party to contract). Furthermore, "fraud does
not vitiate consent when the party against whom the fraud was
directed could have ascertained the truth without difficulty,
inconvenience, or special skill." *Id.*; La. Civ. Code art. 1954.
The Federal Rules of Civil Procedure require a plaintiff to plead
the elements of fraud "with particularity." Fed. R. Civ. P.
9(b). "At a minimum, Rule 9(b) requires that a plaintiff set
forth the 'who, what, when, where, and how' of the alleged
fraud." *United States ex rel. Doe v. Dow Chem. Co.*, 343 F.3d
325, 328 (5th Cir. 2003).

Castrillo asserts that in 2008 he "was induced into signing
a 'loan modification' agreement with Defendants." (R. Doc. 20-3
¶ 4.) Castrillo specifically alleges that defendants failed to
disclose the full amount of his monthly mortgage payments prior
to the execution of the Loan Modification Agreement. He points

out that the Loan Modification Agreement provides for monthly payments of principal and interest of $674.40 (*see* R. Doc. 20-4, "2008 Loan Modification"), but that defendants have improperly charged him monthly payments of $1,438 (*see* R. Doc. 20-4, "Reinstatement Quote"). Castrillo asserts that he would not have entered into the agreement had defendants disclosed monthly payments of $1,438 because that amount constitutes "nearly all of Plaintiff's monthly income." (R. Doc. 20-2 at 1.)

The Court finds that Castrillo has failed to sufficiently allege fraud in the inducement with respect to the Loan Modification Agreement. First, the mere discrepancy between the monthly payments described in the Loan Modification Agreement and the amounts demanded in the Reinstatement Quote does not establish fraud in the inducement with respect to the former. Castrillo does not allege that he was fraudulently induced into making monthly payments of $674.40, which is all the Loan Modification Agreement requires on its face. Instead, Castrillo alleges that he never agreed to monthly payments of $1,438. As already discussed, Castrillo may challenge the amounts demanded by AHMSI and Wells Fargo under the FDCPA and RESPA. But nothing in his complaint alleges with particularity how and when he was fraudulently induced into signing the Loan Modification Agreement itself.

Second, Castrillo has failed to allege detrimental reliance
with respect to the Loan Modification Agreement.  Specifically,
he does not allege that the terms of the modification are worse
than the terms of his loan before modification.  Castrillo's 2005
note appears to provide for monthly payments of $697.84 and a
variable interest rate on outstanding principal starting at 8.813
percent.  (*See* R. Doc. 20-4, "Forged Promissory Note".)  The 2008
modification appears to provide for monthly payments of $674.40
and interest on the outstanding balance at a fixed rate of 6.500
percent.  (*See* R. Doc. 20-4, "2008 Loan Modification".)  Even if
certain terms of the Loan Modification Agreement were
misrepresented, Castrillo's own allegations indicate that he was
still better off because his monthly payments and interest rate
declined.

Castrillo has also failed to allege detrimental reliance
with respect to his claim that defendants attempted to collect on
a fraudulent mortgage note.  First, Castrillo has not alleged
that he made any mortgage payments to defendants after receiving
the purportedly fraudulent note.  In fact, after receiving the
note, Castrillo did not make payments on it but rather notified
defendants' counsel of the purported fraud "[u]pon sight."  (R.
Doc. 20-3 ¶ 11.)  Second, even if Castrillo did make payments
based on the allegedly fraudulent note, he has not alleged that

those payments exceeded the amount otherwise owed on the note.
Castrillo does not deny that he purchased his home with mortgage
financing and that he is obligated to make monthly mortgage
payments to *some* entity.  Nor does Castrillo allege that
conflicting claims are being made by separate purported holders
of his mortgage.  Accordingly, Castrillo has failed to plead with
particularity any "reliance with resultant injury" arising from
defendants' attempt to collect on the allegedly fraudulent note.
*Guidry*, 188 F.3d at 627.

Castrillo's claims that he was fraudulently induced to
execute the February 2008 Loan Modification Agreement and that
defendants have attempted to collect on a fraudulent mortgage
note are futile, and his motion to amend them to his complaint
must be DENIED.  Defendants' motion to dismiss Castrillo's fraud
claims is GRANTED.


**H.  Castrillo's Motion for Summary Judgment**

For the reasons stated, Castrillo is not entitled to summary
judgment.  Summary judgment is appropriate when there are no
genuine issues as to any material facts, and the moving party is
entitled to judgment as a matter of law.  *See* FED. R. CIV. P.
56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).
There remain genuine issues of material fact with respect to

Castrillo's FDCPA and RESPA claims, and his other claims have been dismissed. Accordingly, Castrillo's motion for summary judgment is DENIED.

## IV. CONCLUSION

For the reasons stated, the Court GRANTS Castrillo's motion to amend his complaint with respect to his FDCPA and RESPA claims, and DENIES defendants' motion to dismiss these claims. The Court DENIES Castrillo's motion to amend his complaint with respect to his NHA, TILA, RICO and fraud claims, and GRANTS defendants' motion to dismiss with respect to these claims. The Court DENIES Castrillo's motion for summary judgment.

New Orleans, Louisiana, this 16th day of November, 2009.

_Sarah Vance_

SARAH S. VANCE
UNITED STATES DISTRICT JUDGE