UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

MICHAEL PAUL CASTRILLO                    CIVIL ACTION

VERSUS                                    NO: 09-4369

AMERICAN HOME MORTGAGE                    SECTION: R
SERVICING, INC., WELLS FARGO
BANK, N.A. AS TRUSTEE FOR
CITIGROUP MORTGAGE LOAN TRUST
INC., ASSET-BACKED PASS-
THROUGH CERTIFICATES, SERIES
2005-OPT4

## ORDER AND REASONS

Five motions are before the Court: (1) defendants American

Home Mortgage Servicing, Inc. (AHMSI)'s and Wells Fargo Bank,

N.A.'s motion for summary judgment;[1] (2) plaintiff Michael Paul

Castrillo's motion for judgment on the pleadings;[2] (3)

Castrillo's motion for reconsideration;[3] (4) Castrillo's motion

---

[1]    (R. 62.)

[2]    (R. 41.)

[3]    (R. 37.)

for injunctive relief;[4] and (5) Castrillo's motion to strike.[5]

## I.    BACKGROUND

Castrillo is a homeowner in Bywater, New Orleans.  On April 22, 2005, Castrillo obtained a home mortgage loan from H&R Block Mortgage Corporation, a wholly owned subsidiary of Option One Mortgage Company, now known as Sand Canyon Corporation, and executed an adjustable rate promissory note in the amount of $88,200.00.[6]  Defendants have submitted evidence indicating that H&R Block transferred its interest in Castrillo's mortgage to Option One at some point in 2005.[7]  Defendants have also submitted an affidavit stating that Castrillo's mortgage was "settled" into Citigroup Global Markets Realty Corporation (Citigroup Realty) on June 17, 2005, and sold to Citigroup Mortgage Loan Trust, Inc. (Citigroup Trust) on August 30, 2005.[8] According to the affidavit, Citigroup Trust packaged Castrillo's mortgage into a security entitled Citigroup Mortgage Loan Trust,

---

[4]    (R. 42.)

[5]    (R. 54.)

[6]    (R. 62, Exs. A, C.)

[7]    (R. 25, Exs. A, E; R. 62, Exs. B, E.)

[8]    (R. 62, Ex. C.)

2

Asset-Backed Pass-Through Certificates, Series 2005-OPT4 (Citigroup Security) on September 2005.[9]  Citigroup Trust was the depositor of the mortgage loans backing the Citigroup Security, Option One was the servicer of the mortgage loans, and Wells Fargo was trustee of the Citigroup Security.[10]  The affidavit also states that "in its capacity as trustee, Wells Fargo Bank, N.A., assumed responsibility for as [*sic*] the transfer agent of the certificates but assumed no responsibility or authority as servicer of the loans" under the August 30, 2005 purchase agreement.[11]

Castrillo fell behind on his mortgage payments in late 2007 or early 2008.  Castrillo entered into a loan modification agreement with Option One on February 20, 2008.[12]  The modification agreement recognized outstanding principle of $103,222.61, set a fixed annual interest rate of 6.50% on outstanding principle, and required monthly mortgage payments of $674.40.[13]

---

[9]      (*Id.*)

[10]     (*Id.*)

[11]     (*Id.*)

[12]     (*See* R. 62, Ex. D.)

[13]     (*Id.*)

Option One continued servicing Castrillo's loan until April
30, 2008, when Option One sold the "vast majority" of its loan
servicing assets, including its servicing rights in Castrillo's
mortgage, to AH Mortgage Acquisition Company, Inc.[14]  The
evidence indicates that AH Mortgage then transferred these
servicing rights to its affiliate, AHMSI, which remains the
servicer of Castrillo's loan.[15]  Defendants have submitted an
affidavit stating that Option One no longer has any servicing
rights with respect to Castrillo's loan.[16]

Castrillo received a "Reinstatement Quote" from AHMSI dated
December 19, 2008.[17]  The reinstatement quote demands, *inter
alia*, eleven overdue mortgage payments of $1,438.10 each,
foreclosure attorneys' fees and costs and a sheriff's commission,
for a total of $18,458.56.[18]  Castrillo contends that the quote
was improperly inflated because his mortgage payments were not
$1,438.10, no foreclosure proceedings had been filed at that
time, and no commission had been paid to the sheriff.

---

[14]    (*Id.*, Ex. E.)

[15]    (*Id.*)

[16]    (*Id.*)

[17]    (*See* R. 20-4, "Reinstatement Quote".)

[18]    (*Id.*)

4

Castrillo corresponded with AHMSI a number of times between January 19-23, 2009.[19]  Catrillo characterized his letters as "qualified written requests" within the meaning of the Real Estate Settlement Procedures Act (RESPA).[20]  On January 20, 2009, Wells Fargo, as trustee for the Citigroup Security, notified Castrillo that it intended to institute foreclosure proceedings against his property.[21]  Castrillo responded to Wells Fargo by disputing and requesting verification of his debt.[22]

On March 3, 2009, Castrillo filed this lawsuit *pro se* against AHMSI and Wells Fargo in Orleans Parish Civil District Court.  On April 8, 2009, Wells Fargo sought to foreclose on the mortgaged property through a petition for executory process in the same court.[23]  The Civil District Court ordered the issuance of a writ of seizure and sale on April 9, 2009.[24]  The sheriff

---

[19]    (R. 62, Ex. F.)

[20]    (*Id.*)

[21]    (*See* R. 20-4, "Correspondence Between Plaintiff and Defendants".)

[22]    (*Id.*)

[23]    (*See* R. 25, Ex. E.)

[24]    (*Id.*)

has not executed the writ because of alleged "title issues" implicating Wells Fargo's right to foreclose.[25]

On July 10, 2009, defendants removed Castrillo's action to this Court, invoking the Court's federal question jurisdiction.[26] Castrillo filed a "motion to complete file" on July 30, 2009.[27] The Court treated this as a motion to amend, and granted the motion on August 31, 2009.[28] On August 10, 2009, defendants moved to dismiss Castrillo's complaint for failure to comply with Rule 8 of the Federal Rules of Civil Procedure.[29] On August 19, 2009, Castrillo filed a "motion for leave to file repleaded complaint."[30] The Court treated this as a second motion to amend. On November 16, 2009, the Court granted in part and denied in part defendants' motion to dismiss and Castrillo's second motion to amend.[31] Specifically, the Court dismissed Castrillo's National Housing Act (NHA), Truth in Lending Act

---

[25]    (*Id.*)

[26]    (*See* R. 1-1.)

[27]    (*See* R. 12.)

[28]    (R. 23.)

[29]    (R. 18.)

[30]    (*See* R. 20.)

[31]    *See Castrillo v. Am. Home Mortgage Serv., Inc.*, 670 F. Supp. 2d 516 (E.D. La. 2009).

6

(TILA), Racketeer Influenced and Corrupt Organizations Act
(RICO), and state law fraud claims.  The Court denied defendants'
motion to dismiss Castrillo's Fair Debt Collection Practices Act
(FDCPA) and RESPA claims, and permitted Castrillo to amend his
complaint with respect to these claims.

Defendants now move for summary judgment on Castrillo's
FDCPA and RESPA claims.  Castrillo seeks judgment on the pleading
with respect to these claims.  Castrillo also seeks
reconsideration of the Court's order dismissing his RICO and
state law fraud claims.  Lastly, Castrillo has filed a motion for
injunctive relief seeking a declaration that the confession of
judgment clause in his mortgage note is invalid and an injunction
prohibiting the enforcement of Wells Fargo's writ of seizure and
sale.

## II.  LEGAL STANDARDS

### A.  Judgment on the Pleadings

A motion for judgment on the pleadings under Rule 12(c) is
subject to the same standard as a motion to dismiss under Rule
12(b)(6).[32]  To survive a Rule 12(b)(6) motion to dismiss after
the Supreme Court's decisions in *Twombly* and *Iqbal*, a plaintiff

---

[32]     *Doe v. MySpace, Inc.*, 528 F.3 413, 418 (5th Cir. 2008).

must plead enough facts "to state a claim to relief that is plausible on its face."[33] A claim is facially plausible when the plaintiff pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged."[34] The factual allegations must "raise a reasonable expectation that discovery will reveal evidence" of liability.[35] "A court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff.[36] The court is not, however, bound to accept as true legal conclusions couched as factual allegations.[37] Although *pro se* plaintiffs are held to less stringent standards than those drafted by lawyers, "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss."[38]

---

[33]     *Ashcroft v. Iqbal*, __U.S.__, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007)).

[34]     *Iqbal*, 129 S.Ct. at 1949.

[35]     *Twombly*, 550 U.S. at 556.

[36]     *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 232-33 (5th Cir. 2009); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996).

[37]     *Iqbal*, 129 S.Ct. at 149-50.

[38]     *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002).

In determining whether to grant a motion to dismiss, a district court generally may not "go outside the complaint."[39] When ruling on a motion to dismiss a *pro se* complaint, however, a district court is "required to look beyond the [plaintiff's] formal complaint and to consider as amendments to the complaint those materials subsequently filed."[40]  Furthermore, a district court may consider documents attached to a motion to dismiss if they are referred to in the plaintiff's complaint and are central to the plaintiff's claim.[41]

**B.    Summary Judgment**

Under the Federal Rules of Civil Procedure, summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is

---

[39]    *Scanlan v. Tex. A & M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003).

[40]    *Howard v. King*, 707 F.2d 215, 220 (5th Cir. 1983); *Clark v. Huntleigh Corp.*, 119 F. App'x 666, 667 (5th Cir. 2005) (finding that because of plaintiff's *pro se* status, "precedent compels us to examine all of his complaint, including the attachments"); *cf*. Red. R. Civ. P. 8(d) ("Pleadings must be construed so as to do justice.").

[41]    *Scanlan*, 343 F.3d at 536.

entitled to judgment as a matter of law."[42]  When assessing
whether a dispute as to any material fact exists, the Court
considers "all of the evidence in the record but refrains from
making credibility determinations or weighing the evidence."[43]
All reasonable inferences are drawn in favor of the nonmoving
party, but "unsupported allegations or affidavits setting forth
'ultimate or conclusory facts and conclusions of law' are
insufficient to either support or defeat a motion for summary
judgment."[44]

    If the dispositive issue is one on which the moving party
will bear the burden of proof at trial, the moving party "must
come forward with evidence which would 'entitle it to a directed
verdict if the evidence went uncontroverted at trial.'"[45]  The
nonmoving party can then defeat the motion by either countering
with sufficient evidence of its own, or "showing that the moving
party's evidence is so sheer that it may not persuade the

---

[42]     Fed. R. Civ. P. 56(c)(2); *Celotex Corp. v. Catrett*, 477
U.S. 317, 322-23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d
1069, 1075 (5th Cir. 1994).

[43]     *Delta & Pine Land Co. v. Nationwide Agribusiness Ins.
Co.*, 530 F.3d 395, 398 (5th Cir. 2008).

[44]     *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216
(5th Cir. 1985); *Little*, 37 F.3d at 1075.

[45]     *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257,
1263-64 (5th Cir. 1991).

reasonable fact-finder to return a verdict in favor of the moving party."[46]

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim.[47]  The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists.[48]  The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue for trial.[49]

## C.    Reconsideration

Federal Rule of Civil Procedure 54(b) provides that an order that adjudicates fewer than all the claims among all the parties "may be revised at any time" before the entry of a final

---

[46]     *Id.* at 1265.

[47]     *See Celotex*, 477 U.S. at 325.

[48]     *See id.* at 324.

[49]     *See, e.g., id.* at 325; *Little*, 37 F.3d at 1075; *Isquith for and on Behalf of Isquith v. Middle South Utils., Inc.*, 847 F.2d 186, 198 (5th Cir. 1988), *cert. denied*, 488 U.S. 926 (1988).

judgment.[50] As Rule 54 recognizes, a district court "possesses the inherent procedural power to reconsider, rescind, or modify an interlocutory order for cause seen by it to be sufficient."[51] Although the district court's discretion in this regard is broad,[52] it is exercised sparingly in order to forestall the perpetual reexamination of orders and the resulting burdens and delays.[53]

The general practice of this court has been to evaluate motions to reconsider interlocutory orders under the same standards that govern Rule 59(e) motions to alter or amend a final judgment.[54] Although there may be circumstances in which a different standard would be appropriate,[55] the present motion

---

[50]     Fed. R. Civ. P. 54(b).

[51]     *Melancon v. Texaco, Inc.*, 659 F.2d 551, 553 (5th Cir. 1981).

[52]     *See Calpetco 1981 v. Marshall Exploration, Inc.*, 989 F.2d 1408, 1414-15 (5th Cir. 1993).

[53]     *See, e.g.*, 18b Charles A. Wright *et al.*, Fed. Prac. & Proc. § 4478.1 (2d ed. 2002).

[54]     *See, e.g.*, *Lacoste v. Pilgrim Int'l*, No. 07-2904, 2009 WL 1565940, at *8 (E.D. La. June 3, 2009) (Vance, J.); *Rosemond v. AIG Ins.*, No. 08-1145, 2009 WL 1211020, at *2 (E.D. La. May 4, 2009) (Barbier, J.); *In re Katrina Canal Breaches Consol. Litig.*, No. 05-4182, 2009 WL 1046016, at *1 (E.D. La. Apr. 16, 2009) (Duval, J.).

[55]     *See Am. Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 514-16 (4th Cir. 2003).

does not present them.  The proper inquiry therefore is whether the moving party has "clearly establish[ed] either a manifest error of law or fact or . . . present[ed] newly discovered evidence."[56]  A motion to reconsider is "not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of [the order]."[57]

In deciding motions under Rule 59(e), courts in this district have considered four factors: (1) whether the movant demonstrates the motion is necessary to correct manifest errors of law or fact upon which the judgment is based; (2) whether the movant presents new evidence; (3) whether the motion is necessary in order to prevent manifest injustice; and (4) whether the motion is justified by an intervening change in the controlling law.[58]  The Court is mindful that "[r]econsideration of a judgment after its entry is an extraordinary remedy that should be used sparingly."[59]

---

[56]    *Ross v. Marshall*, 426 F.3d 745, 763 (5th Cir. 2005) (quoting *Simon v. United States*, 891 F.2d 1154, 1159 (5th Cir. 1990)).

[57]    *Templet v. HydroChem Inc.*, 367 F.3d 473, 478-79 (5th Cir. 2004).

[58]    *Faye v. Lytal Marine Operators, Inc.* 2000 WL 19474 at *1 (E.D. La. Jan. 11, 2000)(Vance, J.) (citing *Burma Navigation Corp. V. Seahorse*, 1998 WL 781587 at *1 (E.D.La. Nov. 3, 1998)).

[59]    *Templet*, 367 F.3d at 479.

**III. DISCUSSION**

**A.    Defendants' Motion for Summary Judgment and Castrillo's**

    **Motion for Judgment on the Pleadings**

    1.    FDCPA

Castrillo asserts that defendants violated the FDCPA, 15 U.S.C. § 1692, *et seq.*, by making false representations, contacting Castrillo to work out payment arrangements on a disputed debt, and initiating foreclosure proceedings.

The FDCPA seeks to eliminate "abusive, deceptive, and unfair debt collection practices" by regulating the type and number of contacts a "debt collector" can make with a debtor.[60]  A "debt collector" is "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."[61]  The term "debt collector" does not, however, include "any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity .

---

[60]    *See* 15 U.S.C. § 1692; *Murungi v. Tex. Guar.*, 646 F. Supp. 2d_804, 811-12 (E.D. La. July 2, 2009).

[61]    15 U.S.C. § 1692a(6).

14

. . concerns a debt which was not in default at the time it was obtained by such person."[62] In *Kaltenbach v. Richards*, the Fifth Circuit held that a party enforcing a mortgage may be subject to the entire FDCPA if it satisfies the general definition of a "debt collector" in § 1692a(6).[63] In *Perry v. Stewart Title Co.*, however, the Fifth Circuit held that a debt collector "does not include . . . a mortgage servicing company, or an assignee of a debt, as long as the debt was not in default at the time it was assigned."[64]

Defendants assert that they are not debt collectors within the meaning of the FDCPA because they are not in the business of collecting debts, and because they did not "obtain" Castrillo's loan after it went into default. Defendants also assert that there is no evidence in the record that they engaged in conduct prohibited by the FDCPA.

(a) *Wells Fargo*

Defendants have submitted an affidavit stating that Castrillo's mortgage loan was obtained by Citigroup Trust in

---

[62]     15 U.S.C. § 1692a(6)(F)(iii).

[63]     464 F.3d 524, 529 (5th Cir. 2006).

[64]     756 F.2d 1197, 1208 (5th Cir. 1985) (citing S. Rep. No. 95-382 (1977), *reprinted in* 1977 U.S.C.C.A.N. 1695, 1698)).

August 2005, and that Wells Fargo's interest in Castrillo's loan arose in September 2005, when Wells Fargo became the trustee of the Citigroup Security.[65]  Nothing in the record suggests that Castrillo was in default on his loan at this time.  Although Wells Fargo, as trustee for the Citigroup Security, was again assigned Castrillo's note in June 2009, this latter assignment does not negate the fact that Wells Fargo's interest first arose in 2005.  Accordingly, there is no genuine issue of material fact that Wells Fargo's attempt to collect Castrillo's defaulted loan "concerns a debt which was not in default at the time it was obtained" by Wells Fargo in September 2005, and Wells Fargo is entitled to summary judgment that it is not a debt collector within the meaning of the FDCPA.[66]  Defendants' motion for summary judgment is GRANTED with respect to Castrillo's FDCPA claims against Wells Fargo, and Castrillo's motion for judgment on the pleadings is DENIED with respect to these claims.

    (b)  *AHMSI*

    AHMSI asserts that it is not a debt collector within the meaning of the FDCPA because its principal purpose is not

---

[65]    (R. 62, Ex. C.)

[66]    15 U.S.C. § 1692a(6)(F)(iii).

16

collecting debts. AHMSI does not, however, deny that it "regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."[67] Indeed, AHMSI's reinstatement quote dated December 19, 2008 specifically asserts that it is "an attempt to collect a debt" sent "from a debt collector" and is "required by the Federal Fair Debt Collection Practices Act."[68] Aside from this admission, defendants' own affidavits suggest that AHMSI services at least the "vast majority" of the $967,048,148.00 in mortgage loans underlying the Citigroup Security.[69] The Court finds that there is a disputed issue of fact as to whether AHMSI regularly collects or attempts to collect the defaulted loans that it services, and therefore whether it is a debt collector within the meaning of the FDCPA.

As already discussed, an "exclusion" to the general definition of a debt collector applies to any person who attempts to collect a debt that was not in default at the time it was "obtained."[70] AHMSI obtained its servicing rights in Castrillo's mortgage loan in April 2008, after Castrillo's loan was in

---

[67]    15 U.S.C. § 1692a(6).

[68]    (R. 20-4, "Reinstatement Quote".)

[69]    (*Id.*, Exs. C, E.)

[70]    15 U.S.C. § 1692a(6)(F)(iii).

17

default, and therefore AHMSI is not excluded from the general
definition of a debt collector by § 1692a(6)(F)(iii).[71]

AHMSI asserts that it is not a debt collector because it
never "obtained" an ownership interest in Castrillo's loan.  This
is a red herring.  Whether AHMSI "obtained" Castrillo's loan has
nothing to do with whether AHMSI satisfies the general definition
of a debt collector.  Moreover, the § 1692a(6)(F)(iii) *exclusion*
applies only to debt collectors attempting to collect debts
"obtained" before default.  If AHMSI never obtained Castrillo's
debt, as it claims, then the exemption simply has no application,
and AHMSI is subject to the general definition of a debt
collector.  Put a slightly different way, a finding that a
mortgage servicer does not "obtain" a debt unless it owns the
debt would actually *prevent* most mortgage servicers from ever
invoking the § 1692a(6)(F)(iii) exemption, a result contrary to
the expressed intent of Congress.[72]

The legislative history of the FDCPA confirms that a
mortgage servicer may be a "debt collector" even if it does not

---

[71]    *See Perry*, 756 F.2d at 1208 (finding that a debt
collector "does not include . . . a mortgage servicing company .
. . *as long as the debt was not in default at the time it was
assigned*") (emphasis added).

[72]    *See Franceschi v. Mautner-Glick Corp.*, 22 F. Supp. 2d
250, 254 (S.D.N.Y. 1998).

own the mortgage loan it attempts to collect.  The Senate Report

explains that mortgage servicing companies are exempt from the

FDCPA if they service outstanding debts "*for others*," but only

"so long as the debts were not in default when taken *for*

*servicing*."[73]  The Senate Report thus recognizes both that

mortgage servicers often service debts "for others" and not for

themselves, and also that these mortgage servicers nonetheless

will be subject to the FDCPA when they attempt to collect debts

that were already in default "when taken for servicing."[74]  In

short, neither the text nor the legislative history of the FDCPA

limits debt collectors to debt owners.

AHMSI's assertion that it never "obtained" Castrillo's loan

is also undermined by the structure of the FDCPA.  The term

"obtain" is not defined in the FDCPA, but Congress used the term

"assignment" in other provisions to designate a transfer of

ownership.[75]  The Court assumes that Congress's choice of words

was deliberate, and finds that the word "obtain" was intended to

---

[73]    S. Rep. No. 95-382, 1977 U.S.C.C.A.N. at 1698 (emphasis
added).

[74]    *Id.*

[75]    *See, e.g.*, 15 U.S.C. § 1692a(4) (providing that term
"creditor" "does not include any person to the extent he receives
an assignment or transfer of a debt in default solely for the
purpose of facilitating collection of such debt for another")
(emphasis added); *see also Franceschi*, 22 F. Supp. 2d at 254.

be more than just a synonym of assignment and "to include the possession of the right and responsibility to collect a debt."[76] Here, although AHMSI "obtained" the servicing rights to Castrillo's loan, it did so only after the debt was in default, and therefore it is not exempt from the FDCPA.

AHMSI asserts that it is merely continuing Option One's loan servicing obligations, and that Option One obtained its servicing rights before Castrillo's loan was in default. This argument proves far too much. There is always continuity between a transferor and a transferee, yet, as already discussed, the FDCPA applies to mortgage servicers that attempt to collect loans that were already in default when they were taken for servicing. Moreover, AHMSI is not helped by the Fifth Circuit's decision in *Brown v. Morris*.[77] In *Brown*, the Fifth Circuit found that a mortgage servicer was not a debt collector because it acquired a defaulted loan through a merger with an entity that held the loan before it was in default.[78] Here, defendants' own affidavit states that Option One "sold" the vast majority of its loan servicing assets, including Castrillo's loan, to AH Mortgage Acquisition Company, which in turn "transferred" these servicing

---

[76] *Franceschi*, 22 F. Supp. 2d at 254.

[77] 243 F. App'x 31 (5th Cir. 2007) (*per curiam*).

[78] *Id.* at 34.

rights to its "affiliate," AHMSI.  There was no merger between Option One and AHMSI.  The Court's decision is consistent with *Brown*.

Lastly, AHMSI asserts that it is entitled to summary judgment because Castrillo has failed to submit evidence that AHMSI violated any of the substantive provisions of the FDCPA. The FDCPA prohibits false, deceptive or misleading attempts to collect a debt.[79]  Castrillo alleges that the amounts demanded in AHMSI's reinstatement quote of December 19, 2008 were falsely inflated.[80]  The reinstatement quote demands eleven overdue mortgage payments of $1,438.10 each, although Castrillo's 2008 loan modification on its face requires only $674.40 in monthly mortgage payments.  The reinstatement quote also demands foreclosure attorneys' fees and costs in the amount of $1,788.92. Although there is reference in the record to an initiation and deferral of foreclosure proceedings in 2008,[81] the only documents submitted by defendants reflect that foreclosure proceedings were not initiated until April 2009.[82]  The reinstatement quote further demands a sheriff's commission in the amount of $537.63,

---

[79]     *See* 15 U.S.C. § 1692e(2)(A), (10).

[80]     (*See* R. 20-2 at 1-3.)

[81]     (*See* R. 30, Ex. A.)

[82]     (*See* R. 25, Ex. E.)

but AHMSI has not demonstrated that it in fact paid this amount or what it was for since no sale has occurred.  There may be legitimate explanations for these charges, but AHMSI has not yet adduced them or submitted evidence entitling it to summary judgment.  Indeed, AHMSI acknowledges that "[w]hat fees were due is an issue in dispute that cannot be determined without additional facts" and asserts that it is "gathering evidence to present to the Court in this regard."[83]  The Court finds that there are material issues of fact as to whether AHMSI made false representations concerning the amount of Castrillo's debt or engaged in deceptive means of collecting that debt.  Defendants' motion for summary judgment and Castrillo's motion for judgment on the pleadings are DENIED.


    2.   <u>RESPA</u>

Castrillo claims that defendants violated RESPA because they did not properly respond to his qualified written requests. RESPA requires a "loan servicer" to timely respond to a "qualified written request" from a borrower.[84]  A loan servicer is "the person responsible for servicing of a loan (including the

---

[83]    (R. 48 at 6.)

[84]    *See* 12 U.S.C. § 2605(e).

person who makes or holds a loan if such person also services the loan)."[85] Loan servicing means "receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan . . . and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan."[86] A qualified written request is a correspondence that adequately identifies the borrower and provides reasons for the borrower's belief "that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower."[87] Within 60 days of receiving a qualified written request, a loan servicer must (a) make appropriate corrections in borrower's account; (b) provide the borrower with a written explanation of why the account is correct and who the borrower may contact for further assistance; or (c) provide the borrower with the information requested, or a written explanation of why the information is unavailable or cannot be obtained by the servicer and who the borrower may contact for further assistance.[88]

---

[85]    12 U.S.C. § 2605(i)(2).

[86]    12 U.S.C. § 2605(i)(3).

[87]    12 U.S.C. § 2605(e)(1)(B).

[88]    12 U.S.C. § 2605(e)(2)(A)-(C).

Defendants assert that Wells Fargo is not a "servicer" of Castrillo's loan, that Castrillo never sent defendants a qualified written request, that Castrillo filed this action before the expiration of defendants' 60 day period to respond, and that Castrillo has not alleged any damages arising from defendants' alleged RESPA violations.

(a) *Wells Fargo*

Wells Fargo is not a loan servicer within the meaning of RESPA. There is no evidence that Wells Fargo receives periodic payments from Castrillo and then makes payments of principal and interest pursuant to the terms of Catrillo's loan agreement.[89] To the contrary, the record indicates that Option One performed this function until Castrillo defaulted in March 2008. Wells Fargo, as trustee of the Citigroup Security, simply administers the payments it receives in accordance with the terms of the Citigroup Security.[90] It is true that Wells Fargo initiated foreclosure proceedings against Castrillo, but this alone does not make Wells Fargo a loan servicer. The definition of a loan servicer expressly acknowledges that the holder or owner of a

---

[89] *See* 12 U.S.C. § 2605(i)(3).

[90] (*See* R. 62, Ex. C.)

24

loan is not necessarily the servicer of the loan.[91]  Here, Wells

Fargo may hold Casatrillo's loan as trustee of the Citigroup

Security, but there is no evidence that Wells Fargo also services

Castrillo's loan within the meaning of RESPA.  Accordingly,

defendants' motion for summary judgment is GRANTED with respect

to Castrillo's RESPA claims against Wells Fargo, and Castrillo's

motion for judgment on the pleadings is DENIED with respect to

these claims.


    (b) *AHMSI*

    AHMSI asserts that Castrillo never sent it a "qualified

written request," and alternatively that Castrillo filed this

action before AHMSI was required to respond to his qualified

written request.  AHMSI also asserts that Castrillo has not

demonstrated any damages arising from AHMSI's alleged RESPA

violations.

---

    [91]  12 U.S.C. § 2605(i)(2) (providing that loan servicer
includes the person who makes or holds a loan only "if such
person also services the loan"); *see Consumer Solutions REO, LLC
v. Hillery*, 658 F. Supp. 2d 1102, 1014 (N.D. Cal. 2009)
(observing that § 2605(e) "expressly imposes a duty upon the loan
servicer, and not the owner of the loan"); *cf. Izenberg v. ETS
Servs., LLC*, 589 F. Supp. 2d 1193, 1199-1200 (C.D. Cal. 2008)
(dismissing RESPA claims because plaintiff alleged defendant was
trustee of disputed loan but not loan servicer).

A RESPA plaintiff ordinarily must plead and prove actual damages because in most cases only actual damages are recoverable under RESPA.[92]  Castrillo has not pointed to any actual damages that he suffered "as a result of" AHMSI's alleged failure to timely respond to Castrillo's qualified written request.[93] Castrillo has not made any mortgage payments to AHMSI since disputing his debt, and AHMSI has not seized his property. Although Wells Fargo obtained a writ of seizure and sale against Castrillo's property, Castrillo does not dispute that he is in default on his mortgage.  Moreover, Castrillo has not put forward any evidence that AHMSI has engaged in a pattern or practice of RESPA violations, and therefore statutory damages are unavailable to him under RESPA.[94]  Accordingly, defendants' motion for summary judgment is GRANTED with respect to Castrillo's RESPA claims against AHMSI, and Castrillo's motion for judgment on the pleadings is DENIED with respect to these claims.

**B.    Motion for Reconsideration**

---

[92]    12 U.S.C. § 2605(f)(1)(A); *see also In re Price*, 403 B.R. 775, 793 (Bankr. E.D. Ark. 2009); *Lal v. Am. Home Serv., Inc.*, __F. Supp. 2d__, 2010 WL 225524, at *4 (E.D. Cal. 2010).

[93]    12 U.S.C. § 2605(f)(1)(A).

[94]    12 U.S.C. § 2605(f)(1)(B).

1.  Fraud claims

The Court earlier dismissed Castrillo's fraud claims
because, *inter alia*, Castrillo failed to allege that he
detrimentally relied on defendants' purportedly fraudulent
representations.[95] Castrillo now asserts that he suffered harm
when the Orleans Parish Civil District Court relied on these
representations and issued a writ of seizure and sale against his
property. This claim implicates only Wells Fargo because only
Wells Fargo is pursuing foreclosure proceedings against
Castrillo.

In essence, Castrillo asks the Court to invalidate Wells
Fargo's writ of seizure and sale and enjoin the state court
foreclosure proceedings. The Court, however, lacks jurisdiction
to interfere with ongoing state proceedings that implicate
important state interests,[96] and it also lacks jurisdiction to
review state-court judgments.[97] In *Flores v. Citizens State Bank*

---

[95] *Castrillo*, 670 F. Supp. 2d at 533 (citing *Guidry v.
U.S. Tobacco Co., Inc.*, 188 F.3d 619, 627 (5th Cir. 1999);
*Shelton v. Standard/700 Assocs.*, 798 So.2d 60, 64 (La. 2001)).

[96] *See, e.g.*, *Younger v. Harris*, 401 U.S. 37, 54 (1971);
*Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 14 (1987).

[97] *See, e.g.*, *Rooker v. Fidelity Trust Co.*, 263 U.S. 413,
415 (1923); *D.C. Court of Appeals v. Feldman*, 460 U.S. 462, 476,
482 (1983).

*of Roma, Texas*, the Fifth Circuit held that a federal district

court lacked jurisdiction over a collateral attack on the

validity of a state court judicial foreclosure and writ of

execution.[98]  This case is no different.  The State of Louisiana

has an important interest in resolving foreclosure disputes,[99]

and Castrillo may adequately adjudicate his claim that Wells

---

[98]    132 F.3d 1457, 1457 (5th Cir. 1997) (*per curiam*); *see also United States v. Shepherd*, 23 F.3d 923, 924 (5th Cir. 1994) (declining to review state court judgment confirming validity of allegedly fraudulent foreclosure sale under *Rooker-Feldman*); *Doscher v. Menifee Circuit Court*, 75 F. App'x 996, 997 (6th Cir. 2003) (declining to review state court foreclosure action under either *Younger* or *Rooker-Feldman*); *DCR Fund I, LLC v. TS Family Ltd. P'ship*, 261 F. App'x 139, 145-46 (10th Cir. 2008) (declining to review state court foreclosure sale under either *Younger* or *Rooker-Feldman*); *Gray v. Pagano*, 287 F. App'x 155, 157 (3d Cir. 2008) (declining to review state court foreclosure action under *Younger*); *Mayhew v. Cherry Creek Mortg. Co.*, Inc., 2010 WL 935674, at *16-17 (D. Colo. Mar. 10, 2010) (declining to review state court foreclosure action under either *Rooker-Feldman* or *Younger*).

[99]    *See, e.g.*, *Pennzoil*, 481 U.S. at 13-14 (finding state has important interest in "forcing persons to transfer property in response to a court's judgment" and in "challenges to the processes by which the State compels compliance with the judgments of its courts"); *Doscher*, 75 F. App'x at 997 (finding state has important interest in foreclosure proceeding); *Prindable v. Assoc. of Apt. Owners of 2987 Kalakaua*, 304 F. Supp. 2d 1245, 1262 (D. Haw. 2003) (same); *Gallant v. Deutsche Bank Nat. Trust Co.*, Civ. A. No. 10-6, 2010 WL 537874, at *2 (W.D. Va. Feb. 11, 2010) (same); *Edward v. Dubrish*, Civ. A. No. 07-2116, 2009 WL 1683989, at *10-11 (D. Colo. June 15, 2009); *Smith v. Litton Loan Serv., LP*, Civ. A. No. 04-2846, 2005 WL 289927, at *6-7 (E.D. Pa. Feb. 4, 2005) (same); *Wellman v. Nat. City Mortg. Co.*, Civ. A. No. 08-531, 2008 WL 2329228, at *2 (S.D. Ohio June 4, 2008) (same).

Fargo obtained a fraudulent writ of seizure and sale in state court.[100]  Castrillo therefore must pursue his requested relief in state court.

For the reasons stated, Castrillo's claim that Wells Fargo obtained its writ of seizure and sale through fraud is DISMISSED without prejudice.  The Court DENIES Castrillo's motion for reconsideration with respect to his other fraud claims for the reasons stated in its order of November 16, 2009.

   2.   RICO claims

The Court earlier dismissed Castrillo's RICO claim because Castrillo failed to allege a threat of continued criminal activity.[101]  The Court specifically found that Wells Fargo's foreclosure proceeding was a "single, discrete" transaction that did not "by its nature project[] into the future with a threat of

---

[100]    *See* La. Code Civ. P. arts. 2751-2754, 2642; *see also* *Avery v. CitiMortgage, Inc.*, 15 So.3d 240, 243 (La. Ct. App. 2009) ("Defenses and procedural objections to an executory proceeding may be asserted either through an injunction proceeding to arrest the seizure and sale as provided in Articles 2751 through 2754, or a suspensive appeal from the order directing the issuance of the writ of seizure and sale, or both.").

[101]    *Castrillo*, 670 F. Supp. 2d at 530.

repetition."[102]  Castrillo now asserts that the threat of continued criminal activity is demonstrated by other cases in which mortgage lenders, including Wells Fargo, were found to have lacked standing to pursue foreclosure proceedings or charged improper fees.  These isolated cases, arising in unrelated contexts, do not suggest a "specific threat of repetition extending indefinitely into the future" nor a "regular way of conducting" Wells Fargo's legitimate business.[103]  The Court DENIES Castrillo's motion to reconsider the dismissal of his RICO claims for the reasons stated in its order of November 16, 2009. The Court observes that it did not dismiss Castrillo's RICO claims for failure to plead detrimental reliance.[104]

## C.  Castrillo's Motion for Injunctive Relief

---

[102]  *Id.* at 531.

[103]  *See H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 242 (1989); *see also Heller Fin., Inc. v. Grammco Computer Sales, Inc.*, 71 F.3d 518, 524 (5th Cir. 1996) ("The relatedness inquiry 'focuses on the interrelationship of charged RICO predicates,' thereby ensuring that a person is not 'subjected to sanctions for committing two widely separated and isolated criminal offenses.'").

[104]  *See Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 128 S. Ct. 2131, 2140-41 (2008) (finding first-party reliance not an element of civil RICO claim based on mail fraud).

Castrillo seeks a declaration that the confession of judgment clause in his mortgage note is unenforceable, and an injunction preventing Wells Fargo from enforcing its writ of seizure and sale based on this clause.  For the reasons already discussed, the Court lacks jurisdiction to enjoin the enforcement of Wells Fargo's writ of seizure and sale.  Castrillo must pursue this relief in state court.  Castrillo's motion for injunctive relief is DENIED.

**D.   Castrillo's Motion to Strike**

Castrillo moves to strike defendants' oppositions to his motion for summary judgment, motion for reconsideration and motion for injunctive relief.  Castrillo asserts that defendants' oppositions ignore a number of Castrillo's legal arguments.  This may be true, but it is no reason to strike an opposition from the record.  Castrillo's motion to strike is DENIED.

**IV.   CONCLUSION**

For the reasons stated, defendants' motion for summary judgment is GRANTED with respect to Castrillo's RESPA claims against Wells Fargo and AHMSI.  Defendants' motion for summary judgment is GRANTED with respect to Castrillo's FDCPA claims

against Wells Fargo and DENIED with respect to his FDCPA claims against AHMSI.  Castrillo's motions for judgment on the pleadings and reconsideration are DENIED, although Castrillo's claims concerning the validity of Wells Fargo's writ of seizure and sale are DISMISSED WITHOUT PREJUDICE.  Castrillo's motion for injunctive relief is DENIED.  Castrillo's motion to strike is DENIED.

New Orleans, Louisiana, this 5th day of April, 2010.

_____

SARAH S. VANCE
UNITED STATES DISTRICT JUDGE

32